UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA

| | | |
|---|---|---|
| AMBER L. MCDANIEL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | 1:07-cv-642-SEB-TAB |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner of the Social Security Administration, | ) ) ) | |
| Defendant. | ) | |

**ENTRY DISCUSSING COMPLAINT FOR JUDICIAL REVIEW**

Amber McDaniel ("McDaniel") seeks judicial review of the determination by the Commissioner of the Social Security Administration ("Commissioner") that she was not eligible for child's insurance benefits and Supplemental Security Income ("SSI") under the Social Security Act, 42 U.S.C. § 301, *et seq.* (the "Act").

For the reasons explained in this Entry, the Commissioner's decision must be **remanded for further proceedings.**

**I. Background**

On February 26, 2004, at the age of 18, McDaniel filed an application for SSI and on March 8, 2004, McDaniel filed an application for child's insurance benefits based on disability. The applications were denied initially and upon reconsideration. Her request for a hearing before an Administrative Law Judge ("ALJ") was granted, and such hearing was conducted on June 16, 2006. McDaniel was present with her attorney. Medical and other records were introduced into evidence, and McDaniel and a friend and a vocational expert testified. The ALJ issued a decision on November 21, 2006, denying benefits. On March 22, 2007, the Appeals Council denied McDaniel's request for review making the ALJ's decision the final administrative decision, *see Luna v. Shalala,* 22 F.3d 687, 689 (7th Cir. 1994), and this action for judicial review followed. The court has jurisdiction over the complaint pursuant to 42 U.S.C. § 405(g), which provides that "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . in [a] district court of the United States."

The ALJ's decision included the following findings: (1) McDaniel was 21 years old at the time of the ALJ's decision and would attain age 22 on October 29, 2007, and she met the other non-disability requirements of 20 C.F.R. § 404.350(a): she was an insured's (Philip D. McDaniel) child, was dependent on the insured, was unmarried and had applied for benefits; (2) McDaniel had not engaged in substantial gainful activity since October 30, 1985, the alleged onset date; (3) McDaniel had a severe impairment as a result of these conditions: borderline intellectual functioning and attention deficit disorder ("ADD"); (4) McDaniel did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1; (5) McDaniel did not have a medically determinable impairment that resulted in any exertional limitations and she retained the residual functional capacity ("RFC") to perform unskilled work at all exertional levels that is simple and repetitive work, with no unusual work stresses, with usual interaction with coworkers and supervisors and ability to maintain punctuality and attendance within customary tolerances, and the work must accommodate reading skills at the second grade level, reading comprehension skills at the third grade level, writing skills at the third grade level, and math skills at the fourth grade level; (6) McDaniel had no past relevant work; (7) at all times relevant to the ALJ's decision, McDaniel was a younger individual age 18-44, she had a limited education and was able to communicate in English; (8) transferability of job skills was not an issue because McDaniel did not have past relevant work; and (9) considering McDaniel's age, education, work experience, and RFC, she was able to perform jobs that existed in significant numbers in the national economy.  With these findings in hand, and through the application of applicable rules, the ALJ concluded that McDaniel had not been under a "disability" as defined in the Act since October 30, 1985.

## II.  Discussion

### A.  Applicable Law

An individual under the age of 18 is entitled to child's benefits on the earnings record of an insured person who is entitled to old-age or disability benefits or who has died if the individual is the insured person's child; is dependent on the insured; is unmarried and applies; and is under age 18 or is 18 years old or older and has a disability that began before she became 22 years old, or is 18 years or older and qualifies for benefits as a full-time student.  20 C.F.R. § 404. 350(a). For purposes of child's benefits and SSI, the term "disability" means an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A).

The task a court faces in a case such as this is not to attempt a *de novo* determination of the plaintiff's entitlement to benefits, but to decide if the Commissioner's decision was supported by substantial evidence and otherwise is free of legal error. *Kendrick v. Shalala,* 998 F.2d 455, 458 (7th Cir. 1993). "Substantial evidence" has been defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison v. NLRB,* 305 U.S. 197, 229 (1938)).

### B. Analysis

McDaniel argues that substantial evidence does not support the ALJ's decision. Specifically, McDaniel asserts that the ALJ's finding at step five is not supported by substantial evidence and is contrary to the testimony of the vocational expert. McDaniel also asserts that the ALJ erred in her step three finding that McDaniel's impairments did not meet or equal a listing.

#### 1. Step Five Issues

The record establishes that McDaniel had engaged in several part-time jobs in the fast food industry and as a cashier, but none resulted in substantial gainful activity. (R. at 11). The vocational expert testified that in his opinion, having listened to McDaniel's testimony regarding her confusion on the job, her inability to follow even simple instructions and her inability to deal with the pace required of her, McDaniel would not be able to perform any jobs. (R. at 278-79). He stated that his testimony was consistent with the Dictionary of Occupational Titles ("DOT") (R. at 279). The ALJ did not discuss this portion of the vocational expert's opinion. The ALJ did discuss other portions of the vocational expert's testimony, that given the RFC recited in Part I above, McDaniel could perform a significant number of housekeeper and janitor jobs. (R. at 17-18, 277-78). The ALJ noted that this testimony was consistent with the DOT and that she relied on it as the basis of her denial of McDaniel's claim. (R. at 18).[1] McDaniel argues that the ALJ's failure to discuss and weigh the expert's testimony that McDaniel could not perform any jobs requires a remand.

The Commissioner responds that the ALJ is responsible for determining McDaniel's credibility, not the vocational expert, presumably contending that the vocational expert's opinion in this regard is irrelevant. This argument is unavailing because the ALJ appears to have conceded that McDaniel was credible. (R. at 15)("Further, no symptom or combination of symptoms can be the basis for a finding of disability, no matter how genuine the individual's complaints may appear to be, unless there are medical signs and laboratory findings demonstrating the existence of a medically determinable mental impairment(s) that could reasonably be expected to produce the symptoms."). The ALJ did not find that McDaniel's testimony concerning her confusion on the job, inability to follow simple instructions and keep up with required pace was not credible. "[G]eneral principles of administrative law preclude the Commissioner's lawyers from advancing grounds in support of the agency's decision that were not given by the ALJ." *Golembiewski v. Barnhart*, 322 F.3d 912, 916 (7th Cir. 2003).

Absent the ALJ's consideration and evaluation of the vocational expert testimony which was favorable to McDaniel's claim, the court cannot be confident that the ALJ considered the important evidence of record, nor can it trace the path of the ALJ's

---

[1]McDaniel argues that the original hypothetical posed to the vocational expert was not consistent with the record as a whole to the extent it assumed that McDaniel's absenteeism and punctuality would be within normal limits. This contention was first asserted in the reply brief and therefore will not be addressed by the court. *See Nelson v. La Crosse County Dist. Atty.*, 301 F.3d 820, 836 (7th Cir. 2002).

reasoning. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Hickman v. Apfel,* 187 F.3d 683, 689 (7th Cir. 1999) (an ALJ must "sufficiently articulate his assessment of the evidence to assure us that [he] considered the important evidence . . . [and to enable] us to trace the path of [his] reasoning.") (internal quotation omitted).

The basis for the ALJ's unfavorable view of McDaniel's claim was a lack of objective evidence, not McDaniel's testimony. In the course of discussing McDaniel's credibility, the ALJ concluded that McDaniel's statements concerning the intensity, persistence and limiting effects of her cognitive problems could not be accepted as preclusive of the limited range of work reflected in the ALJ's RFC assessment. (R. at 15). "Under the regulations, an individual's statement(s) about his or her symptoms is not enough in itself to establish the existence of a physical or mental impairment or that the individual is disabled." *Id.* McDaniel's statements, however, were not the only evidence of her limitations.[2]

The Commissioner argues that the ALJ reasonably determined that McDaniel had not provided adequate medical records to support her claim that her mental impairments precluded her from maintaining employment on a continued, sustained or substantial basis. *Id.* The ALJ discussed, however, the opinions of examining psychologists and gave the greatest weight to those of Dr. Meunier and Dr. Kladder. (R. at 16). The ALJ's conclusion that McDaniel lacked evidence overlooked Dr. Kladder's opinion that McDaniel was functionally illiterate and did not have the basic academic skills to perform most tasks of adult daily living such as being able to read the newspaper and want ads or fill out a job application or handle money on her own. (R. at 316). Dr. Kladder opined that McDaniel was "going to have difficulty with multistep instructions and that she's going to learn best by hands on practice and demonstration." (R. at 318). He further opined that McDaniel has "significant attention deficit hyperactivity disorder which interferes with her decision-making and judgment as well as her ability to deal with academics in the past and also to learn new information and procedures in the present." *Id.* Dr. Kladder discussed test scores which indicated a significant elevation in scales dealing with hyperactivity and attention difficulties. (R. at 316-17). The ALJ did not discuss these findings.

The ALJ did note that Dr. Kladder diagnosed McDaniel as having borderline intellectual functioning, that McDaniel's educational challenges may have stemmed from a non-supportive family situation, that he recommended that McDaniel be seen by a physician experienced in ADHD and that he believed McDaniel would respond to medication. (R. at 16). The ALJ did not ignore Dr. Kladder's opinion, but she did not explain how Dr. Kladder's findings did not constitute "adequate medical records" that support McDaniel's claim that her mental impairment prevented her from performing substantial gainful activity.

---

[2]The ALJ also reasoned that McDaniel's participation in vocational classes and subsequent jobs was inconsistent with her claim that she was unable to work because of her mental handicap. (R. at 16). This rationale is not supported by substantial evidence. Indeed, the ALJ recognized that none of McDaniel's past jobs within the fast food industry or as a cashier generated earnings that rose to the level of substantial gainful activity. (R. at 11). Contrary to the ALJ's reasoning, McDaniel's job history actually supported her claim that she was unable to perform substantial gainful employment. Although she had made many attempts, the record shows that she had not been successful.

In addition to Dr. Kladder's findings, Dr. Meunier discussed McDaniel's scaled auditory, visual, recognition and memory scores, stating that "some of these scores are very poor, and all are below average." (R. at 163). He reported that McDaniel's difficulty with recall supported "the observation of her foster mother, that is that she probably does have some memory problems." *Id.* He continued by saying that he was "not convinced that we have a memory deficit here as much as what we are seeing is the difficulty she has learning material and the low IQ." *Id.* The ALJ stated that Dr. Meunier "questioned the presence of any memory problem" (R. at 16), but failed to acknowledge the undisputed symptoms.[3] Whether McDaniel's problems with recall are identified as "memory problems" or are the result of McDaniel's difficulty in learning material and her low IQ, the ALJ failed to inquire of the vocational expert whether such symptoms would significantly impede her ability to function in the context of job performance. It is quite possible that the vocational expert's reference to McDaniel's "confusion on the job, her inability to follow even simple instructions and her inability to deal with the pace required" correlated with the undisputed evidence of McDaniel's poor recall, difficulty in learning material and her low IQ.

The ALJ must build an accurate and logical bridge between the evidence and the result to permit meaningful judicial review of the administrative findings. *Ribaudo v. Barnhart*, 458 F.3d 580, 584 (7th Cir. 2006); *Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir.2003); *Sarchet v. Chater*, 78 F.3d 305, 307 (1996). If the evidence on which the ALJ relied does not support the conclusion, the decision cannot be upheld. *Blakes*, 331 F.3d at 569. The ALJ's failure to discuss the vocational expert's testimony that McDaniel could not perform any job requires a remand for further consideration. In addition, although the ALJ referenced the reports of Dr. Kladder and Dr. Meunier, she did not build a logical bridge between that evidence and her conclusion that there was not adequate medical evidence to support McDaniel's claim that her mental impairments prevented her from maintaining employment on a continued, sustained and substantial basis.

### 2.     Listing 12.05(C)

The ALJ determined that McDaniel had severe impairments consisting of borderline intellectual functioning and ADD. (R. at 11).  At step three of the ALJ's analysis, she concluded that McDaniel's mental impairments did not meet or medically equal any listed impairment. McDaniel contends that her impairments met or medically equaled Listing

---

[3]The ALJ discounted Dr. Kladder's opinion as it related to memory problems, concluding that Dr. Kladder did "only a cursory review of memory." (R. at 16, citing 315). Substantial evidence does not support this characterization. Dr. Kladder did not describe his memory tests as "cursory." He performed a mental status exam and clinical interview.  (R. at 314-15). Dr. Kladder noted that McDaniel had "difficulty on items screening for auditory processing and memory and was only able to accurately recite the first and shortest sentence out of three sentences of increasing length." (R. at 315).  He further noted that McDaniel's remote memory was below average and she had difficulty in relating timeframes and details of events in her past history. *Id.* McDaniel's "recent memory seemed to be intact and she was able to remember what she had eaten for dinner recently as well as general recent news events." *Id.* McDaniel "had difficulty with delayed memory although she was able to immediately remember and recite three objects, but was only able to remember two out of the three after five minutes and was not able to come up with the middle item even after being given a number of clues." *Id.*

12.05(C).  Listing 12.05(C) contains the following criteria:

> 12.05 Mental retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22. The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> * * *
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 12.05B,C.

> The full scale IQ test scores of record taken in different years, are the following:
>
> | Year | Score |
> |------|-------|
> | 1993 | 69 |
> | 1996 | 65 |
> | 1999 | 62 |
> | 2004 | 73 |
> | 2005 | 73 |

(R. at 192, 315).[4]

The ALJ stated that "[b]ased on those [2004 and 2005] scores, I conclude that the condition does not meet or equal Listing 12.05(C)." (R. at 13). The ALJ did not find that the earlier scores were not valid. Rather, she determined that the more recent scores were "more reliable" primarily because Dr. Meunier noted that the 2004 scores "are a bit higher than what she has been producing with the K-Bit, but that is not terribly unusual.  In my experience, the K-Bit tends to underestimate IQ's some." (R. at 13).  The ALJ also reasoned that the later scores reflected McDaniel's condition without the variations that could be attributed to the developing years and measuring instrument. *Id.* The ALJ generally gave "most weight" to Dr. Meunier's and Dr. Kladder's opinions because they were most detailed. (R. at 16). Dr. Kladder reviewed the IQ scores and gave no indication that the earlier scores were invalid. McDaniel argues, in fact, that Dr. Kladder's remark that McDaniel's 2005 "spelling and arithmetic scores are significantly below what would be expected based on her IQ scores" (R. at 316) indicates that her IQ scores were highly inflated when compared with her actual ability. The Commissioner responds to McDaniel's claim by stating that she "fails to explain what the significance would have been if the ALJ had accepted the lower IQ scores; Plaintiff makes no argument that she met or equaled a listed impairment." Clearly, however, McDaniel argues at length that her mental impairment met or equaled Listing 12.05C. (Plaintiff's Brief, Part II).

---

[4]The ALJ failed to mention the 1996 full scale IQ of 65.

The court cannot reweigh the evidence as McDaniel suggests to find that the higher 2005 IQ scores were not valid. *Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000) ("We must examine the entire record, but we cannot reweigh the evidence or substitute our own judgment for that of the ALJ."). The ALJ explained her rationale for determining that the more recent scores were more reliable.

The court notes, however, that even if the ALJ's reasoning was accepted as supported by substantial evidence, it might only be so to the extent the ALJ considered McDaniel's eligibility for a single period of time. The ALJ determined that McDaniel had not been under a disability since October 30, 1985. (R. at 18). More specifically, the ALJ concluded that based on the application for child's insurance benefits based on disability, McDaniel was not disabled prior to October 29, 2007, the date she attained age 22, and that in relation to the application for SSI, McDaniel was not disabled based on the application filed on February 26, 2004. *Id.* No expert concluded that the IQ scores below 70 were invalid. Even if Dr. Meunier's remark about the K-Bit tests is taken into consideration, there is no evidence that the 1993 scores (full scale 69) (administered by the Wechsler Intelligence Scale for Children), were invalid. As pointed out by the Commissioner, the regulations state that "[g]enerally the results of IQ tests tend to stabilize by the age of 16." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.00(D)(10). The regulations further provide that "IQ test results obtained at age 16 or older should be viewed as a valid indication of the child's current status, provided they are compatible with the child's current behavior." *Id.* "IQ test results obtained between ages 7 and 16 should be considered current for 4 years when the tested IQ is less than 40, and for 2 years when the IQ is 40 or above." *Id.* The IQ test results obtained in 1993, 1996, and 1999 were taken when McDaniel was between the ages of 8 and 14 and each should be considered current for two years. On remand, the ALJ shall reconsider her findings at step three in relation to whether McDaniel's IQ scores, coupled with her severe mental impairment of ADD, would lead to a finding that Listing 12.05(C) was satisfied for purposes of child's insurance benefits, if only for a closed period of time.

### III. Conclusion

For the reasons set forth above, the ALJ's decision that McDaniel was not entitled to SSI or child's insurance benefits is not supported by substantial evidence and the court is required to **remand** the case to the ALJ for further consideration. *Melkonyan v. Sullivan,* 501 U.S. 89, 98 (1991) (a court may remand the case after passing on its merits and issuing a judgment affirming, modifying, or reversing the Commissioner's decision, a "sentence four" remand).

Judgment consistent with this Entry shall now issue.

Date: 01/29/2009

*Sarah Evans Barker*
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana